# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD J. CARROLL, | 1:06-cv-00227-AWI-SMS (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| WIMBISH, et. al., | |
| Defendants. | (Doc. 1) |

**I.   SCREENING ORDER**

　　Ronald J. Carroll ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on February 28, 2006.

**A.   Screening Requirement**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support

of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

      **B.**    **Summary of Plaintiff's First Amended Complaint**

It appears that all of Plaintiff's allegations pertain to his confinement as an involuntary civil detainee in the Kern County Jail while awaiting commitment proceedings.  However, the specific factual basis of Plaintiff's claims are missing.  It should be noted that Plaintiff's complaint is replete with legal quotations, argument, and rhetorical questions.  Plaintiff's "Statement of the Claim" covers a little more than ten pages – of which less than ten lines contained specific factual allegations.  Near the end of his complaint, Plaintiff delineates nine alleged claims wherein he makes general conclusory allegations, without alleging their specific factual basis and/or which defendant(s) were responsible for their occurrence.

The Court, is unable to find that Plaintiff's complaint states any cognizable claim(s) for relief against any named defendant(s).  The Court provides Plaintiff with the following law that might apply to his generalized claims.  The legal standards provided below are not intended to be an exhaustive list of claims that Plaintiff may or may not raise in an amended complaint. It is Plaintiff's duty to specify his claims for relief and their factual basis against each named defendant.  The Court will not guess as to which facts Plaintiff might believe support which of his claimed constitutional violations against any given defendant.

      **C.**    **Pleading Requirements**

          ***1. Rule 8(a)***

A plaintiff's complaint **must** satisfy the requirement of Federal Rule of Civil Procedure 8(a), which calls for a "*short and plain* statement of the claim showing that the pleader is entitled to relief." Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47.  However, while detailed

allegations are not required, Plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

The Court finds that the allegations of Plaintiff's complaint are too generic and conclusory to put defendants on notice of the actions that allegedly violated Plaintiff's rights.  In his amended complaint, plaintiff is urged to list each claim separately and provide a brief statement of facts indicating what acts or omissions he attributes to each defendant that allegedly violated his constitutional rights.  Plaintiff should complete the form complaint as completely as possible.  Plaintiff is further directed to refrain from using legal references, arguments, and/or jargon as they are inappropriate at the pleading stage.

Plaintiff is also advised that he is not required to tender evidence at this stage in the proceedings and should refrain from submitting attachments.  It is inappropriate to attach exhibits to a complaint.  See Rule 8, Federal Rules of Civil Procedure.  The Court cannot serve as a repository for the parties' evidence.  Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a Motion for Summary Judgment, at trial, or when requested by the court).

### *2. Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff's complaint fails to link any named defendant(s) to the allegedly unconstitutional acts or omissions.  Each of Plaintiff's delineated claims refer only to "defendants," or "defendants, et al."  Such general conclusory allegations are insufficient to place any given defendant on notice as to what actions (or inactions) Plaintiff feels they engaged in that violated Plaintiff's constitutional rights.  The Court assumes that Plaintiff has named all four defendants based on their responsibilities for overseeing the placement and transfers of all civil detainees.  However, this is insufficient as such allegations are nothing more than an attempt to impose liability via respondeat superior, which is not permissible under section 1983.

Finally, Plaintiff only very generally identifies the conditions he alleges violate his constitutional rights – as further discussed herein below.  These very general, conclusory allegations are insufficient to allow the Court to find that they rise to the level of constitutional violations, even in light of notice pleading.  "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

**D. Legal Standards**

***1. Civil Detainees under California's Sexually Violent Predator Act. ("SVP")***

"First, civilly detained persons must be afforded 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to

4

punish.' Youngberg v. Romeo, 457 U.S. 307, 322,(1982); see also Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir.2000).  It follows logically, then, that the rights afforded prisoners set a floor for those that must be afforded SVPs, and that where the Defendants violate a standard that is clearly established in the prison context, the violation is clearly established under the SVP scheme, except where the California SVP statutory scheme would give a reasonable official reason to believe that the body of law applicable to prisoners would not apply. ...  The 'only reasonable conclusion from binding authority' is that the conditions of confinement for SVPs cannot be more harsh than those under which prisoners are detained, except where the statute itself creates a relevant difference." Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007).

### *2. Confinement in County Jail Awaiting SVP Commitment Proceedings*

"... [A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive.  Under *Bell* and our circuit precedent, a restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods. With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.  Finally, to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove deliberate indifference on the part of government officials." Odom v. Kolender 393 F.3d 918, 934 (9th Cir. 2004) (citations and internal quotation marks omitted).  Plaintiff states that the conditions under which he was held were "identical to those suffered by penal inmates being detained for serious crimes."  Thus, Plaintiff meets the threshold to trigger the rebuttable presumption of being held under punitive conditions.

However, Plaintiff fails to link any of the named defendants to his retention at the county jail while awaiting commitment proceedings.  Plaintiff has named only supervisorial defendants: Sheriff Wimbish, District Attorney Jagels, the Kern County Board of Supervisors, and Kern

County Director of Mental Health Koditek. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that his retention in the county jail while awaiting SVP commitment proceedings was the result of any of the named defendants personal participation; knowledge of the violation(s) and failure to act to prevent them; or promulgation or "implement[ation of] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646.

Thus, Plaintiff fails to state a cognizable claim for his retention in the county jail while awaiting SVP commitment proceedings.

### 3. False Arrest &/or False Imprisonment

Plaintiff states that he "was falsely arrested and/or falsely imprisoned in the Kern County Jail ... [from] May 15, 2000 thru June 15, 2000, and March 25, 2005 thru April 8, 2005, for a total of approximately 45 days some in isolation and/or protective custody. And the potential of yet another situation as that just described, should not be treated lightly or to continued, by the County and this Court." Doc. 1, pg. 4.

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider

whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey 512 U.S. 477, 487 (1994). Heck's favorable termination rule applies to civil detainees (under the SVPA) who seek to challenge their commitment. Huftile v. Miccio-Fonseca 410 F.3d 1136, 1140 (9th Cir. 2005). Thus, a civil detainee's § 1983 claims for damages and declaratory relief, based on challenges to his or her confinement, are barred by Heck. However, "... a prayer for prospective relief will not 'necessarily imply' the invalidity of a [conviction and/or commitment term], and so may properly be brought under § 1983." Edwards v. Balisok, 520 U.S. 641, 648 (1997). Further, Heck does not bar a § 1983 claim if habeas relief is unavailable. See Nonette v. Small, 316 F.3d 872, 875-77 (9th Cir. 2002).

As a civil detainee under the SVPA awaiting commitment proceedings, Plaintiff must first show a favorable termination underlying his detention. Plaintiff fails to make this showing, and thus any such claims for damages and declaratory relief are barred by Heck.

Plaintiff requests injunctive relief against being held in Kern County Jail during civil commitment proceedings pursuant to Welfare & Institutions Code § 6600 et. seq. and Penal Code §§1610 and 4002. To prevail, Plaintiff must establish standing, see Lewis v. Casey, 518 U.S. 343, 351-354 (1996), and meet the usual requirements for injunctive relief, see, e.g., O'Shea v. Littleton, 414 U.S. 488, 499, 502 (1974).

"The usual rule in federal cases is that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated." Roe v. Wade, 410 U.S. 113, 125 (1973) (citations omitted). However, if the offending circumstance has abated, a plaintiff may pursue a claim if s/he is able to show that the offensive circumstance is capable-of-repetition, yet evading review. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515 (1911); Roe, 410 U.S. at 125. However, the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that s/he will again be subjected to the alleged illegality. DeFunis v. Odegaard, 416 U.S. 312, 319 (1974). If a party does not make a showing that s/he is realistically threatened by a

repetition of an offending act, then s/he has not met the requirements for seeking an injunction in a federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice. City of Los Angeles v. Lyons 461 U.S. 95, 109 (1983).

Plaintiff was detained at the Kern County Jail for a total of 45 days (May 15, 2000 - June 15, 2000 and March 25, 2005 - April 8, 2005). Thus, per his allegations, Plaintiff is not currently being held in the Kern County Jail. While Plaintiff states "the potential of yet another situation as that just described, should not be treated lightly or to continued, by the County and this Court," he fails to allege circumstances under which he will be subjected to the scenario he complains of in the future. Plaintiff is reminded that speculation on future events is insufficient to meet the actual controversy requirement.

Further, Plaintiff is advised that 18 U.S.C. § 3626(a)(1)(A) provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Thus, a plaintiff must first state a cognizable claim, before the Court will be able to assess whether the requested injunctive relief is narrowly drawn, extends no further than necessary to correct the violated Federal right, and is the least intrusive means for doing so.

Plaintiff fails to state any cognizable claims as he fails to state almost any specific facts as to the circumstances of which he complains, other than that he was held in the county jail while awaiting SVP commitment proceedings. Further, in his delineated claims, Plaintiff makes only conclusory allegations (i.e. being subjected to unreasonable searches, searches as a form of punishment, degrading public strip searches, and the use of unreasonable force and or physical restraints, conditions of confinement that are punitive in nature, inadequate facilities, excessive punishment, unnecessary restrictions on movement and exercise, unnecessary isolation and/or seclusion, improper restrictions of law library access and degrading strip searches.) Doc. 1, pg. 14 & 15. Such conclusory allegations are not specific enough to place the defendants on notice

as to the specific action(s), or inaction(s), they engaged in so as to allegedly infringe on Plaintiff's Federal rights. As discussed in further detail herein below, Plaintiff fails to allege any cognizable claims for violation of his rights under the Federal constitution. Thus, there is no need for the Court to address Plaintiff's request for prospective injunctive relief at this time.

### *4. Procedural Due Process*

Plaintiff's first claim alleges that he was subjected to "unreasonable searches, searches as a form of punishment, degrading public strip searches, and use of unreasonable force and/or physical restraints" so as to violate of his rights to procedural due process. Doc. 1, pg. 14. Plaintiff's fifth claim alleges that he experienced "unnecessary restrictions on movement, loss or lack of privileges, confiscation of personal property and other punishments, without advance written notice, and opportunity to present evidence on his liberty and property interests without Due Process of Law." Doc. 1, pg. 16. Plaintiff's sixth claim alleges violation of his substantive due process rights as "improper punishment, unsanitary facilities, unrestrained abuses, are shocking because they are arbitrarily applied to civil commitment detainees intended to be confined in a hospital for treatment purposes." Doc. 1, pg. 16.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Plaintiff has not alleged any facts to support a claim that he was deprived of a protected liberty, or property interest. Further, he must state what, if any due process he received for each deprivation of a protected interest he intends to pursue.

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 117 S. Ct. 1845 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). Plaintiff has not

alleged any facts that would support a claim that any action by any defendant(s) were clearly arbitrary and unreasonable.

### 5. *Conditions of Confinement*

Plaintiff's fourth claim alleges that, in violation of the Eighth and Fourteenth Amendments, he was subjected to conditions of confinement that constitute cruel and unusual punishment "including, but not limited to ...: inadequate facilities, excessive punishment, unnecessary restrictions on movement and exercise, unnecessary isolation and/or seclusion, improper restrictions of law library access and degrading strip searches." Doc. 1, pg. 15.

"... SVP's are detained for the purpose of treatment, and the state's power to punish them expires at the end of their sentence. Accordingly, the Eighth Amendment is not the proper vehicle to challenge the conditions of civil commitment." Hydrick v. Hunter 500 F.3d 978, 994 (9th Cir. 2007) citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

The standard applicable to SVPs under the Fourteenth Amendment is at least coextensive with that applicable to prisoners under the Eighth Amendment. See, e.g., Munoz v. Kolender, 208 F.Supp.2d 1125, 1146 (S.D.Cal.2002) (applying Fourteenth Amendment standards to SVPs because "comparable standards apply to both prisoners' Eighth Amendment cruel and unusual punishment and Fourteenth Amendment substantive due process analyses, with Fourteenth Amendment analysis borrowing from Eighth Amendment standards"); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998) (applying Eighth Amendment standards to evaluate pretrial detainees' Fourteenth Amendment claims). Moreover, the Eighth Amendment provides too *little* protection for those whom the state cannot punish. (citations omitted) Hydrick 500 F.3d at 994.

"While excessive force claims by prisoners are reviewed under the Eighth Amendment's malicious and sadistic standard, Hudson v. McMillian, 503 U.S. 1 (1992), the more generous Fourteenth Amendment standard applies to those who are civilly confined. ... If confinement of a sexually violent predator is civil for the purposes of evaluation under the Ex Post Facto clause, that confinement is civil for the purposes of defining the rights to which the detainee is entitled while confined [in a treatment facility]. Civil status means civil status, with all the Fourteenth Amendment rights that accompany it." Hydrick v. Hunter, 500 F.3d 978, 997-98 (9th Cir. 2007)

1   citing Jones, 393 F.3d at 933.  "The Fourteenth Amendment requires that civilly committed

2   persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520,

3   536 (1979), within the bounds of professional discretion, Youngberg v. Romero, 457 U.S. 307,

4   321-22 (1982).  Moreover, due process requires that the conditions and duration of confinement

5   [for civilly confined persons] bear some reasonable relation to the purpose for which persons are

6   committed."  Seling v. Young, 531 U.S. 250, 265 (2001); see also Jones v. Blanas, 393 F.3d 918,

7   931 (9th Cir. 2004).  While the nature of an SVP's confinement may factor in this balance of what

8   is reasonable, it is clearly established that the substantive due process protections of the

9   Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.

10  2001) (applying the Fourteenth  Amendment's "objective reasonableness" standard to excessive

11  force claims brought by civilly committed SVPs)."  Hydrick v. Hunter, 500 F.3d 978, 997-98 (9th

12  Cir. 2007).

13      While Plaintiff alleges that he was subjected to "excessive punishment, unnecessary

14  restrictions on movement and exercise, unnecessary isolation and/or seclusion, improper

15  restrictions of law library access and degrading strip searches," he fails to allege any specific

16  action or inaction of the use of *any* physical force being used against him, nor has he alleged

17  what it was about the conditions in the county jail he feels amounted to punishment, were outside

18  the bounds of professional discretion, or were not reasonably related to the purpose for which he

19  was being held.

20      Any claim(s) Plaintiff intends to make regarding the conditions of his confinement in the

21  county jail are also evaluated under Eighth Amendment standards.  Although the Eighth

22  Amendment does not apply here, similar standards may apply to SVPs under the Fourteenth

23  Amendment.  Since there is a dearth of cases regarding unconstitutional conditions of

24  confinement under the Fourteenth Amendment, those cases addressing unconstitutional

25  conditions of confinement under the Eighth Amendment at least provide the minimum standards

26  to be applied in reviewing such claims raised by SVPs.  Hydricks v. Hunter 500 F.3d 978, 997

27  (2007) citing Munoz v. Kolender, 208 F.Supp.2d 1125, 1146 (S.D.Cal.2002) and Anderson v.

28  County of Kern, 45 F.3d 1310, 1314-15 (9th Cir.1995) (collecting cases in prison context).  The

main problem with Plaintiff's complaint is that he fails to allege with specificity what about the conditions of his confinement in the county jail he believes violated his rights under the Fourteenth Amendment – he fails to allege: how his ability to move and exercise were unnecessarily restricted; how he was unnecessarily isolated and/or secluded; how his access to the law library was improperly restricted; and how he was strip searched so as to be degraded. Plaintiff simply fails to allege specific facts to place any defendant(s) on notice of any actions, or inactions that amounted to unconstitutional conditions of confinement.

### 6. *Ex Post Facto and Double Jeopardy*

Plaintiff's second and third claims allege that his retention has violated the Ex Post Facto and Double Jeopardy Clauses. However, the Supreme Court in Seling v. Young 531 U.S. 250 (2001) held that a sexually violent predator law was not subject to as-applied Ex Post Facto and Double Jeopardy challenges based on the lack of treatment received by a particular detainee under the law. Id. at 263. See also Hydrick v. Hunter 500 F.3d 978, (9th Cir. 2007) and Hubbart v. Super. Ct. 19 Cal.4th 1138, 1171 (1999).

Thus, Plaintiff is unable to state a cognizable claim against any of the named defendants for violating either the Ex Post Facto or Double Jeopardy Clauses.

### 7. *Equal Protection*

Plaintiff's seventh claim alleges that he has not received equal protection of law under the Fourteenth Amendment by being subjected to "more restrictive, punitive and degrading conditions than other civil commitments... [and that] other commitments receive greater privileges, rights and relevant, more humane and proper treatment than the plaintiff." Doc. 1, pg. 17.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in

a suspect class, such as race.  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).  To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  Village of Willowbrook, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Even though SVPs do not constitute a suspect class, heightened scrutiny may be required where fundamental interests are at issue.  See Harper v. Va. State Bd. of Elections, 383 U.S. 663, 670 (1966) and Police Dep't of Chicago v. Mosley, 408 U.S. 92 (1972).  A "heightened scrutiny standard" has been utilized when evaluating an equal protection violation under sexually violent predator statutes.  See Young v. Weston, 176 F.3d 1196, 1201 (9th Cir.1999), *rev'd on other grounds*, Seling, 531 U.S. 250.  Young was decided in 1999 and rested on the firmly established principle that heightened scrutiny will be applied where a fundamental liberty interest is at stake. See Skinner v. Oklahoma, 316 U.S. 535, 541 (1942).

Plaintiff may be able to claim violations of a clearly established fundamental right – such as a liberty interest in freedom from bodily restraint and personal security, Youngberg, 457 U.S. at 315-316.  Accordingly, a Plaintiff may be able to show that a difference in treatment between themselves and other civilly committed persons violates equal protection because such treatment does not meet heightened scrutiny.  However, it cannot be said that it is firmly established that

*every* condition of an SVP's confinement is subject to heightened scrutiny. <u>Hydrick v. Hunter</u> 500 F.3d 978, 998 (9th Cir. 2007). In the prison setting, it is clear that prison officials need latitude in deciding how to run prisons, and the courts have refused to subject each classification drawn by prison officials to heightened scrutiny. Rather, a prisoner cannot challenge the conditions of his confinement on equal protection grounds unless the discrimination against him is irrational or arbitrary. <u>See</u> <u>McGinnis v. Royster</u>, 410 U.S. 263, 276 (1973).

In this case, Plaintiff has failed to allege facts to show both that he has been subjected to a difference in treatment from that received by other SVPs, that a clearly established fundamental liberty has been violated, and that any difference in treatment was irrational and/or arbitrary. Thus, Plaintiff fails to state a cognizable claim for violation of his right(s) to Equal Protection under the Fourteenth Amendment.

### 8. *Confidentiality of Telephone Calls and Mail Service*

Plaintiff's eighth claim alleges that he was required to use non-confidential telephones, his legal and personal correspondence was opened by jail staff and viewed outside of his presence, and that he "experienced restrictions of privileges and other improper punishments simply for this status...." Doc. 1, pg. 17.

#### a. *Telephone Calls*

The constitutional right at issue is "the First Amendment right . . . to communicate with persons outside prison walls," and "[u]se of a telephone provides a *means* of exercising this right." <u>Valdez v. Rosenbaum</u>, 302 F.3d 1039, 1048 (9th Cir. 2002) (emphasis in original).

Inmates have a First Amendment right to telephone access, subject to reasonable security limitation. <u>See</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996).

Plaintiff fails to state a cognizable claim for being required to use non-confidential telephones. While he has a first amendment right to telephone access in general, he has no constitutional right to *confidential* telephone access, as screening telephone calls by prison personnel is a reasonable (and allowable) security limitation.

#### b. *Mail*

The mere fact that prison officials open and conduct a visual inspection of a prisoner's

legal correspondence does not state a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996). Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-7 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). In Wolff v. McDonnell, the Supreme Court noted that inspecting mail from attorneys in the presence of the inmate did all, and perhaps even more, than the Constitution requires. Id. at 577. The issue of whether or not prison officials may also, consistent with the First Amendment, open and visually inspect mail from attorneys outside the presence of the prisoner has not been decided by the Supreme Court or by the Ninth Circuit. In Wolff v. McDonnell, the legal mail at issue was mail sent to respondent from his own attorney. Correspondence between an attorney and a client is entitled to special protection under the attorney-client privilege. "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)). Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) only as test relates to *incoming mail* - Turner test applies to incoming mail).

Plaintiff's claim that his legal and personal correspondence was opened by jail staff and viewed outside of his presence are insufficient at this time to raise to the level of a cognizable claim.

### 9. *Privacy*

Plaintiff's ninth claim alleges that "Defendants policies, practices and customs do not permit privacy in situations ... when showering, visiting, [and] using the telephone." Doc. 1, pg.

18.

Civil detainees do not enjoy an *absolute* right to privacy, and Plaintiff has not alleged any facts which would support a claim that these conditions were unreasonable, or gratuitous under the circumstances. Hydrick, 500 F.3d at 992-1000. Therefore, Plaintiff's bare allegations that his constitutional rights were violated because he was not given privacy when showering, visiting, and using the telephone are not sufficient to give rise to any cognizable claims.

## II.     **CONCLUSION**

For the reasons set forth above, plaintiff's complaint is dismissed with leave to file an amended complaint within thirty days.  If plaintiff needs an extension of time to comply with this order, plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his amended complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is also reminded that it is inappropriate to attach exhibits to a complaint. See Rule 8, Federal Rules of Civil Procedure. Further, the Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court). At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief. Thus, in amending his complaint, plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Finally, plaintiff is advised that Local Rule 15-220 requires that his second amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must file an amended complaint curing the deficiencies identified by the court in this order; and
4. If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

**Dated:   August 4, 2008**           /s/ Sandra M. Snyder
                          UNITED STATES MAGISTRATE JUDGE